# American Surety Company of New York v. Bales et al.

(Decided March 19, 1929.)

CLEMENTS & CLEMENTS and JOHN A DEAN, JR., for appellant.

EARL S. WINTER, GLOVER H. CARY, FLOYD J. LASWELL, H. A. BIRKHEAD, R. MILLER HOLLAND, LOUIS I. IGLEHEART and SANDIDGE & SANDIDGE for appellees.

OPINION OF THE COURT BY JUDGE LOGAN—Reversing.

George W. Bales was elected sheriff of Daviess county, and qualified at the beginning of the year 1918.

and served until the end of the year 1921. He executed such bonds as the law requires with the American Surety Company of New York as surety thereon. At the October term of the fiscal court in the years 1918, 1919, 1920, and 1921, a commissioner was appointed by that court to make settlement with the sheriff. These settlements were reported to the fiscal court, where they were approved and filed in the county court, and there likewise approved without exceptions, save the last settlement, to which exceptions were filed by the county attorney for the county. The settlement made for the year 1918 was approved in the county court on February 21, 1919; that for the year 1919 was approved February 17, 1920; that for the year 1920 was approved on February 15, 1921. The last settlement was held up by reason of exceptions until the year 1927, when the compromise was reached between the county and the appellant. In making these settlements, the provisions of sections 1884 and 4146, Kentucky Statutes, were observed and complied with. The settlements, copies of which are made a part of the record, show that they covered only the revenues collected by the sheriff for the county and for the schools in the county. The sheriff made no attempt to report the amount received by him through fees, commissions, rewards, or from other sources. He accounted for the county and school revenues which came into his hands.

In the latter part of 1923 the fiscal court of Daviess county instituted suit against the sheriff and his surety, the appellant, whereby the county sought to recover of them the sum of $2,766.07, alleged to have been received and retained by the sheriff as compensation for his official services during the year 1918, which sum was in excess of the compensation allowed him by law for his services. At the same time the fiscal court filed a suit against the same defendants, seeking to recover on the same grounds the sum of $1,609.81 for the year 1919. At the same time the fiscal court instituted a third suit seeking on the same grounds to recover $2,348.16 for the year 1920, and an uncertain sum for the year 1921. These suits do not appear to have been hastened to a final judgment, but, on July 5, 1927, the appellant entered into a compromise agreement with the fiscal court of Daviess county whereby a settlement was reached between the fiscal court and appellant touching all of the years for which the appellant was surety on the bond of the sheriff.

A resolution embodying the terms of the settlement covering the years mentioned in the petitions, and also including the year 1921, was adopted by the fiscal court at a regular meeting held on July 5, 1927. By the terms of this agreement the appellant admitted that Bales as sheriff had failed to report and account for $750 during each of said years, or a total of $3,000. This, includnig interest and cost, brought the total sum paid by the appellant to the county up to $3,130.80, which was accepted in full satisfaction of all claims that the county had or might have against the sheriff or the appellant, his surety. It was also a part of the agreement, which was embodied in the resolution or judgment, that the claim of Daviess county against Bales should be transferred and assigned to the surety who paid the amount agreed upon and approved by the resolution which was entered of record. This agreement was carried out, and the fiscal court of the county assigned and transferred to the appellant all of the rights, licns, claims, and demands of every kind whatsoever of the fiscal court and of the county of Daviess against Bales and against all other persons on account of the liability of Bales to the county for the years mentioned.

During his term of office, Bales was the owner of certain real estate in Daviess county consisting of several parcels, some of which were in the county and some in the city of Owensboro. This real estate had been conveyed away by Bales at the time of the settlement made by appellant and the fiscal court. After the settlement was accomplished and the claims of the county had been assigned and transferred to appellant, it instituted suit in the Daviess circuit court on July 8, 1927, against George W. Bales and the purchasers of the real estate owned by Bales during his term of office. The facts leading up to the settlement between the fiscal court and appellant were fully recited in the petition. Those who had purchased the property from the sheriff were made parties, as were those having or claiming liens against the property. The suit was based on the provisions of section 4130, Kentucky Statutes, which allows a lien to the county for any funds collected by the sheriff for the county and not accounted for by him. Under the provisions of that section, the county of Daviess had a lien on all the real estate of the sheriff from the date he began to act as sheriff, including all real estate that was ac-

quired by him while he was in office, and this lien continued or continues in favor of the county until the money so collected by the sheriff has been accounted for by him.

In April, 1923, G. E. Black and Mary Black executed a mortgage to the Federal Land Bank of Louisville on 82 1/5 acres of land conveyed to them by George W. Bales on January 16, 1923. The Land Bank was made a party defendant in the action along with G. E. Black and Mary Black.

On October 15, 1924, George W. Bales conveyed a house and lot on Frederica street in Owensboro to Julia C. Dixon, which property he owned during the time that he was sheriff, and she was therefore made a party defendant. J. A. Kirk had also purchased real estate from George W. Bales during the pendency of the suits filed against him by the fiscal court. Carrie O. Booth and E. G. Booth had also purchased real estate from the sheriff which he owned during the time of his incumbency, as had Gladys Hager and her husband, Fred F. Hager. All of them were made parties defendants to the action instituted by the appellant. G. E. Black and Mary Black denied the allegations in the petition and relied in their answer on the statute of limitations in bar of appellant's claim. The defendants Federal Land Bank of Louisville, Gladys Hager, Julia C. Dixon, Carrie O. Booth, and J. A. Kirk, traversed so much of appellant's petition as alleged that the sheriff had collected and retained at least $750 each year in excess of the compensation allowed him by law, and by the second paragraph of their separate answers they alleged that Bales, as sheriff, had made settlement with the county for the years 1918, 1919, and 1920, which settlements had been confirmed, and upon these alleged facts pleaded the five-year statute of limitations in bar of plaintiff's claim. In the third paragraph of the answer of the Land Bank, it is admitted that appellant had a lien on the real estate described in the petition for $750, the amount claimed for the year 1921 as having been retained illegally by Bales as sheriff. Gladys Hager and her husband, in a separate paragraph of their answer, relied on limitations against the claim of appellant for the year 1921, based on the allegation that the fiscal court knew or could have discovered that Bales had retained money in excess of his compensation for that year. They filed an amended answer further pleading the statutes of limitation for the five years, basing their

plea upon the ground that the fiscal court knew or by the exercise of due diligence could have known that the sheriff had retained money in excess of his compensation for each of the years. The answers of Julia C. Dixon, Carrie O. Booth, and J. A. Kirk contained substantially the same allegations as the answer of Gladys Hager and her husband, with an added paragraph. This added paragraph is to the effect that, at the time Julia C. Dixon became the purchaser of the real estate described in the petition, there was an existing lien in the sum of $5,000 against the property which she purchased, which lien was thereafter discharged by her. Carrie O. Booth alleged that there was a lien of $3,000 against the real estate purchased by her at the time of the purchase which she thereafter discharged. The defendant Kirk alleged in his answer that there was an existing lien against the property which he purchased from Bales for the sum of $1,500, which he afterwards discharged. Each of the defendants pleading that he had discharged a lien on the property at the time he purchased it, prayed that, in the event it should be held that the property was liable to appellant, the amount of the liens which had been respectively discharged by each of them should be deducted from the value of the land before there should be a pro rata distribution of the amount of the judgment which should be obtained against the parties.

The appellant filed demurrers to the affirmative paragraphs in the answers setting up the plea of limitation, and also to the paragraphs in the answers setting up that certain of the parties had discharged subsisting liens against the real estate after the purchase of the property. These demurrers were overruled. Thereafter the appellant filed replies to the separate answers traversing affirmative allegations and pleading specifically that for each of the years in question the fiscal court of the county had appointed a special commissioner to make settlement with the sheriff, and that the settlement had been made, approved, and confirmed by the county court for the years 1918, 1919, and 1920; that exceptions had been filed to the settlement for the year 1921, which settlement had never been confirmed. It was alleged in the replies that the sheriff had made no other settlements with the fiscal court than for county and school taxes collected by him. and that he had not made settlements as required by law, and that the settlements so made did not take into con-

sideration sums collected by the sheriff and retained by him as his compensation. It was further alleged in the replies that the fiscal court of Daviess county in the suits instituted by it had not sought to collect any sum from Bales and the appellant retained by the sheriff as revenues of the county or school. Demurrers were filed to the paragraphs of the replies seeking to avoid the plea of limitation, and the court sustained the demurrers. The appellant failing to further plead, the court dismissed its petition, and the first question presented to us upon this appeal is whether the court erred in sustaining the demurrer to these paragraphs of the replies, or rather whether the court erred in overruling the demurrer to the paragraphs in the answers pleading the statutes of limitation.

This court handed down an opinion on March 5, 1929, in the case of Steele v. Commonwealth, 14 S. W. (2d) ——, in which, after considering the opinions touching upon the time in which suits must be brought to surcharge settlements made with sheriffs, it said:

"From these cases and others announcing the same principles we deduce the rules that, under the provisions of sections 1884 and 4146, Kentucky Statutes, it is the duty of the fiscal court annually, at its October term, to appoint a commissioner to settle with the sheriff. When the settlement is so made it is reported to the fiscal court for its consideration and approval, and is thereafter filed in the county court for the approval of that court. If exceptions are filed to the report by either party they are heard from the court, and either party may appeal to the circuit court and to the Court of Appeals as in other cases. The settlement does not become final until the exceptions have been finally disposed of. In case the settlement is confirmed, as required by law, without exceptions, it is final and conclusive on all parties, and it cannot be attacked, except on the grounds of fraud or mistake, in a suit to surcharge the settlement. Such a suit must be brought within five years after the confirmation of the settlement, unless the fraud or mistake is discovered at a later date. A suit to surcharge on the ground of fraud or mistake may be instituted within five years after the discovery, but not after ten years from the

date of the confirmation of the settlement. If no commissioner is appointed to settle with the sheriff, it is his duty, nevertheless, to appear before the fiscal court and there make settlement of his accounts. If the sheriff fails to make settlement a suit may be instituted to compel him to do so, and in the same suit a recovery may be had for any amount shown to be due by the sheriff. A suit to compel the payment of the amount shown to be due by a settlement is not the exclusive remedy where no settlement has been made. An imperfect settlement or one that was made with the fiscal court, without exceptions, and was not thereafter approved by the county court, as required by law, is not conclusive on the parties and it may be attacked in any suit based upon it."

Where a sheriff makes a settlement which is approved as the law requires, it is conclusive on all parties to the settlement except that it may be attacked on the ground of fraud or mistake, but such an attack must be made within five years after the date of the final approval of the settlement, unless the fraud or mistake is discovered after the approval, in which event suit may be instituted to surcharge the settlement on the ground of fraud or mistake within five years after the discovery, but in no event after ten years from the date of the final approval of the settlement. It is argued by counsel for appellant that the suit which was instituted by the fiscal court against Bales and the appellant was not a suit to surcharge a settlement, and that the fifteen-year statute of limitations (Ky. Stats., sec. 2514) applies to such actions and not the five-year statute. We cannot agree with the counsel that it was not a suit to surcharge the settlements. When the settlements were made, the sheriff omitted to report, and the commissioner failed to require him to report, sums retained by him as a part of his official compensation, which he should have reported. If these settlements were approved, when certain sums which the sheriff should have included in his settlement were omitted, either through fraud or mistake, they were subject to attack because of the omissions as indicated above. An examination of the petitions filed by the fiscal court against Bales and the appellant convinces the court that they were suits to surcharge the settlements.

It is alleged in the petitions that the sheriff had made settlements, but had failed to include in the settle-

ments sums collected by him for his official services in excess of the amount allowed him by law. It was these suits which were compromised and settled by the fiscal court and appellant, and it was the rights which the county had to recover in these suits which were assigned and transferred to appellant. The question, therefore, is whether the appellant has authority to maintain this action on the claims, rights, and interests assigned to it by the county.

The lien provided for in section 4130, Kentucky Statutes, exists as long as there is money due by the sheriff to the county by reason of revenue which he has collected for the county. There is no doubt that the county, if anything was owing by the sheriff, was entitled to recover at the time the compromise was made. A resolution was entered by the fiscal court which was in effect a judgment by agreement of the parties, and it was the rights determined by this resolution which were assigned to the appellant.

Counsel for the appellees rely on the case of Blackwell v. Fidelity & Deposit Co., 163 Ky. 76, 173 S. W. 321, where it was held by this court that, where a judgment was obtained by a county against the sheriff and his surety, which judgment was paid by the surety, the right of action to enforce the liens given by section 4130, Kentucky Statutes, must be instituted within five years after the approval of the sheriff's settlement. In that case the surety paid the judgment and took an assignment to itself. Thereafter it instituted suits to enforce the statutory lien against purchasers of real estate which belonged to the sheriff during his incumbency. The court held that the action instituted by the surety was barred by the five-year statute of limitations, and, as the suit was not instituted until more than five years after the final approval of the settlement of the sheriff, the right of action was barred. It was also suggested in the opinion that, if the surety desired to save its rights, it should have filed a cross-petition against the purchasers of the land in the suit filed against the sheriff and the surety by the county. There is no way to distinguish that case from the case at bar, and, if this court adheres to that opinion, the judgment of the lower court was correct. But it is argued by counsel for appellant that a different rule was announced in the case of Mason v. Cook, 187 Ky. 260, 218

S. W. 740. In that case this court, after quoting section 4130, Kentucky Statutes, said:

"This statute is indeed a drastic one, but, it is notice to every one, who may purchase lands from a sheriff, which he owned at the time of his induction into office, or acquires while holding the office, that he, in a way, becomes the surety of the sheriff to the extent of the value of the lands acquired from him, for all the moneys which the sheriff may quit the office of the sheriff owing to the State, county or any taxing district, which he may have collected for them, or for which he may be liable to either of them. The statute does not provide, that the granting of a quietus shall be cause for setting aside its terms, but specially provides, that the lien shall continue until the money shall have been paid. The granting of the quietus is not for the purpose of notice to the public, but, is only one of the means, which are provided for the counties and taxing districts, to protect themselves against the continuation in office of an officer engaged in fraudulent peculations, but, it does not satisfy the demands upon him."

In the same case the court took occasion to say that, while the suit to surcharge the settlement for the year 1906 was instituted after the expiration of five years, yet it was an action seeking to surcharge the settlement on the grounds of fraud and mistake in its making, and that it was brought within five years after the discovery of the frauds and mistakes contained in it and within ten years from the commission of the frauds and mistakes, and that the evidence clearly disclosed that the frauds and mistakes could not have been discovered by ordinary diligence before the expiration of five years from the date of making the settlement. That suit was an action by the sureties to enforce liens against land purchased from the sheriff, which were owned by him during his incumbency. The sheriff had collected taxes from taxpayers whose assessment had been omitted from the assessment rolls, and it was held that the surety might enforce the lien againt the purchasers of the real estate. It cannot be said that this latter case is exactly in conflict with the case of Blackwell v. Fidelity & Deposit Co., supra, but some of the principles announced therein appear to be out of harmony with the conclusions reached

in that case. The court in the Blackwell case appears to have overlooked the provision in section 2515, Kentucky Statutes, which requires an action upon a liability created by statute to be brought within five years, *when no other time is fixed by the statute creating the liability.* Section 4130, Kentucky Statutes, does not fix the time when the liability created therein shall cease or determine other than by stating that *the lien shall exist until the debt is paid.* That necessarily means that the lien must exist until the sheriff has discharged the duty imposed upon him by statute and has paid over the money which he has collected. It was said by this court in the case of Mason v. Cook, supra, that every person who bought real estate owned by the sheriff during his incumbency, in a way, became surety for the sheriff.

At the time the resolution was entered by the fiscal court accepting and approving the settlement made by the appellant, the county had a lien against the property which the sheriff had owned during his term of office, and this lien was one of the rights transferred and assigned to the surety by the county, and the surety stepped into the shoes of the county with all of the rights which the county had. The lien existed for the benefit of the county until its debt was paid, and continued in favor of the one who paid the debt for the sheriff who was subrogated to the rights of the county. It seems to the court that, in so far as it was held in the Blackwell case, supra, the right of the surety to institute a suit to enforce such a lien was barred by the statutes of limitation at the end of five years from the date of the approval of the settlement, when the county had instituted a suit to surcharge the settlement within five years, is not sound law, and to that extent it is overruled. The lien given in section 4130 must continue until the sheriff has satisfied the amount due the county, and it is not satisfaction for the surety to pay his debt for him unless the surety does so, and voluntarily surrenders its rights in so doing. That was not the case here. The surety knew the county had a lien on the property described in the petition, and, in paying the county the amount due, and in taking the assignment, the lien passed to it in full force and effect, and it was within its rights in instituting the suit to enforce the lien given by section 4130, which lien had not been satisfied by the sheriff at the time the claim was assigned to the surety. Having this view of the law, the court has reached the conclusion that the trial court was in error

in overruling the demurrer to the plea of limitations interposed by the appellees below. The purchasers of the real estate from the sheriff are not precluded by the settlement which was made, as they were not parties to it, and they may show, if they can, that the sheriff was not indebted to the county at the time of the settlement made by the appellant. If these purchasers should be able to show that no lien existed in favor of the county at the time of that settlement because the sheriff was not indebted to the county it would follow as a matter of course that the appellant obtained no lien by reason of the assignment made by the county.

It is also suggested by counsel for appellees that, if money was retained by the sheriff as alleged in the petition, it was not such funds as are referred to by the provisions of section 4130, Kentucky Statutes, and for that reason the county had no lien, but that question is fully answered against the contention of the appellees in the case of Mason v. Cook, supra.

If there were liens against the property sold by the sheriff at the time he entered upon the discharge of his duties as such, the appellees, who are claiming a reduction in the value of the real estate purchased by them because of the discharge of such liens, are right in their contention, but, if the liens were placed upon the property after he entered upon the discharge of his duties as sheriff, they are not correct in their contention.

Judgment reversed, and cause remanded for proceedings consistent with this opinion.

Whole court sitting.

### DISSENTING OPINION BY JUDGE WILLIS.

I am of the opinion that the lien given by section 4130, Ky. Stats., is limited to the amount of taxes collected by the officer less his commissions, and that no lien exists for any other claim against the sheriff. The language is:

"The Commonwealth, the county and taxing district shall have a lien from the date the sheriff begins to act upon the real estate of the sheriff therein secured or afterward acquired by him, which shall not be discharged until the whole amount of money collected by the sheriff or collector, or for which he may be liable to them respectively, shall have been paid."

My view of that provision is that it creates a lien on the sheriff's land for the revenue collected, less his commission, and does not cover any other debt that might be due from the sheriff. I regard the decision in the case of Mason v. Cook, 187 Ky. 260, 218 S. W. 740, as reconcilable with this view.

I am also of the opinion that the lien given is a liability created by statute without providing any fixed period of limitation on the remedy, and the lien may not be enforced after the lapse of five years from the time a cause of action first accrues. The reasoning of the opinion in Blackwell v. Fidelity & Deposit Co., 163 Ky. 76, 173 S. W. 321, satisfies me of its soundness, and I regret to see it overruled. The later case of Mason v. Cook, supra, as I understand it, is not in conflict with the Blackwell case.

Section 4130 is a drastic statute creating a lien of uncertain amount and indefinite duration. No possible way exists for a prospective purchaser from a sheriff to ascertain its existence or extent, and the necessary effect of the construction now placed upon it is to disable a sheriff from dealing in real property during his term, or thereafter for a long period of years. I think it would comport with the terms of the statute and sound policy to adhere to the Blackwell case.